UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PHILADELPHIA INDEMNITY
INSURANCE COMPANY, as subrogee of
BALDWIN REAL ESTATE
CORPORATION,

                 Plaintiff,

    -v-                              1:19-CV-1456

KATHLEEN BURKE BARKER,

                 Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

O'CONNOR, O'CONNOR LAW FIRM      ELIZBETH J. GROGAN, ESQ.
    ALBANY OFFICE                  TERENCE P. O'CONNOR, ESQ.
Attorneys for Plaintiff
20 Corporate Woods Boulevard
Albany, New York 12211

de LUCA LEVINE                   JEFFREY M. ZIELINSKI, ESQ.
Attorneys for Plaintiff            THADDEUS S. KIRK, ESQ.
Three Valley Square
Blue Bell, Pennsylvania 19422

CABANISS CASEY LLP           BRIAN D. CASEY, ESQ.
Attorneys for Defendant        JOHN R. CASEY, ESQ.
4 Tower Place, Suite 100
Albany, New York 12203

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION AND BACKGROUND

On November 22, 2019, plaintiff Philadelphia Indemnity Insurance Corporation ("PIIC" or "plaintiff") brought a single-count complaint against defendant Kathleen Burke Barker ("Barker" or "defendant"), alleging simple negligence under New York common law.  Dkt. 1.  Although one could imagine a set of circumstances in which an insurance company would bring a negligence claim in its own right against a single person, this case takes the more traditional route of subrogation.

One of PIIC's clients, Baldwin Real Estate Corporation ("Baldwin"), owns a plot of land at 5398 Hemlock Drive, Lowville, New York.  Dkt. 27-13, Defendant's Statement of Material Facts ("DSMF"), ¶ 1.[1]  Through plaintiff, Baldwin insured a two-story, four-unit apartment building (the "building"). *Id.* ¶ 2.  Baldwin's policy with plaintiff included fire insurance.  Dkt. 1 ("Compl."), ¶ 2.[2]

Baldwin's investment in fire insurance would turn out to be prudent, because on April 6, 2019, the building burst into flames.  DSMF ¶ 3.  As is often the case, plaintiff's coverage allowed it to assume Baldwin's rights

---

[1] The facts are taken from defendant's statement of material facts where admitted by plaintiff, or from other record evidence.  Disputed facts are flagged and supported by citations to either the proponent's statement of material facts or to record evidence.

[2] The Court refers to plaintiff's complaint solely to illuminate the factual context and will not rely on it in considering the merits of the parties' present motion practice.

against the person responsible for causing the fire, and it has acted as Baldwin's subrogee ever since.  *Id.* ¶ 4.

Enter Barker.  As PIIC would have it, defendant is to blame for the conflagration because she carelessly disposed of a cigarette.  Compl. ¶ 9. Plaintiff alleges that that carelessness provides the negligence to support its claims in this district.  *Id.* ¶ 14.  Predictably, defendant disagrees and moved for summary judgment in her favor under Federal Rule of Civil Procedure ("Rule") 56 on December 29, 2020.  Dkt. 27.

Less predictably, however, the how and why of the fire has no bearing on Barker's motion for summary judgment.  Instead, the parties are sparring over whether PIIC has sufficiently proven the damages it suffered as a result.

As evidence of damages, PIIC largely relies on the report of Christopher Vaughn ("Vaughn"), a general adjuster.  *See generally* Dkt. 28-1.  According to plaintiff, Vaughn's report details the amount that plaintiff paid to restore the building.  Dkt. 28, Plaintiff's Statement of Material Facts ("PSMF"),[3] ¶ 10.  That amount ultimately totaled $720,375.71, broken down into three subcategories.  Dkt. 28-1, p. 509.[4]  Building and "incurred" damages apparently cost $656,037.72, satisfying code requirements cost another $23,088.35, and Vaughn's report listed Baldwin's lost rent during the

---

[3] Dkt. 28 contains several responsive documents, but the Court only refers to plaintiff's statement of material facts in this Memorandum-Decision and Order.

[4] Pagination Corresponds with CM/ECF.

reconstruction as $41,249.64.  *Id.*  As support, Vaughn's report included invoices from both contractors: one responsible for the reconstruction and one responsible for the upgrades to the building necessary to bring it up to code. *Id.* pp. 456, 475.  Those invoices reflect the same costs that Vaughn's report claims.  *Id.*  at 456, 475, 509.

But Barker comes away from Vaughn's report with a decidedly different impression.  According to defendant, Vaughn's report reflected nothing more than a "negotiated, agreed-upon settlement of the fire loss claim." DSMF ¶ 10.  Defendant cites to several passages throughout Vaughn's report and testimony that she argues demonstrate that the number PIIC came up with only reflected a settlement, and nothing more.  Dkt. 28-1, pp. 4, 137, 182, 380, 382; Dkt. 28-2 ("Vaughn Dep. 1"), pp. 14, 48, 63; Dkt. 282-3 ("Vaughn Dep. 2"), pp. 18-19, 26.

However, that dispute was not the only quirk to emerge from discovery in this case, many of them stemming from discovery's timing.  In the absence of other guidance, Rule 26(a)(3) provides the timeline for the parties' pretrial discovery disclosures.  FED. R. CIV. P. 26(a)(3).  In this case, though, those deadlines were governed by a scheduling order put in place by United States Magistrate Judge Daniel J. Stewart on February 13, 2020, which expressly superseded Rule 26(a)(3)'s usual timelines.  Dkt. 13, ¶ 1.

One of the areas the scheduling order controlled was the timing of expert witness disclosure.  To that end, Magistrate Judge Stewart ordered PIIC to disclose its experts no later than ninety days before the discovery deadline. Dkt. 13, ¶ 6(A)(i).  Magistrate Judge Stewart then gave Barker forty-five days to provide her expert reports.  *Id.*¶ 6(A)(ii).  Both parties could then present all reports of rebuttal experts no later than thirty days before the discovery deadline.  *Id.* ¶ 6(A)(iii).  The final discovery deadline was November 16, 2020.  Dkt. 23.

The parties agree that PIIC has only disclosed one expert in this case. Plaintiff disclosed Daniel E. Vieau ("Vieau"), an expert investigator, on July 20, 2020.  Dkt. 27-8, pp. 2, 83.  According to Barker, Vieau's report was primarily focused on determining the cause of the fire, rather than the damages the fire caused.  *See* DSMF ¶ 15.  Vieau ultimately opined that defendant had improperly disposed of a lit cigarette in a plastic pot on the back patio, and the fire was a direct result.  Dkt. 27-8, pp. 17-19.

For her part, Barker disclosed her own expert in fire investigation, Dr. Jamie McAllister ("McAllister"), on September 29, 2020.  Dkt. 27-10, p. 1. McAllister's opinion primarily undermined Vieau's contention that a carelessly discarded cigarette caused the fire.  *Id.* at 19-20.  McAllister also claimed that there was not enough information available to determine the actual cause.  *Id.*

5

In answer, PIIC submitted a rebuttal report by Vieau on October 19, 2020. Dkt. 27-12, p. 1. As "rebuttal" report suggests, Vieau's report disagrees with McAllister's conclusions and explains why he continues to believe that his original opinions as to the source of the fire are best supported by the evidence. *Id.* at 4-6. One of Vieau's supporting arguments was that some studies showed that cigarettes could ignite peat and potting soil in a planter while causing minimal smoke. *Id.* at 4.

On December 30, 2020—the day after Barker moved for summary judgment—defendant submitted a supplemental report augmenting McAllister's initial report. Dkt. 28-4 ("McAllister Suppl."), p. 2. McAllister's supplemental report was apparently intended to "address opinions arising from [her] review of additional materials received since" her initial one. *Id.* at 5.

Substantively, though, McAllister's supplemental report summarized her opinions in five points. The first point disputed that there was potting soil, peat moss, or leaves in the planter when Barker extinguished her cigarette. McAllister Suppl. 18. The remaining four points specifically criticize Vieau's opinions. *Id.*

On January 27, 2021, PIIC opposed Barker's motion for summary judgment and cross-moved to strike McAllister's supplemental report as untimely under Rule 37(c)(1). Dkt. 28. This decision now follows.

6

## II. <u>LEGAL STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment under Rule 56 is warranted if the entirety of the parties' submissions show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing FED. R. CIV. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of pointing the court to the materials that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Additionally, a court considering a summary judgment motion "must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). Even so, a non-movant's conclusory allegations without support from record evidence are insufficient: the non-movant must "put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). At bottom, summary judgment tasks the Court with assessing the assembled evidence and determining whether a reasonable factfinder could find in the

nonmovant's favor. *Treglia v. Town of Manlius*, 313 F.3d 713, 719

(2d Cir. 2002).

## III. <u>DISCUSSION</u>

There are two motions at play.  Barker has moved for summary judgment

against PIIC's complaint.  Plaintiff has fired back with a cross-motion to

exclude McAllister's supplemental report and to preclude her from testifying

as to its substance.  Because there is no point in ruling on the propriety of

McAllister's supplemental report if plaintiff's claim cannot survive, the Court

will address defendant's motion for summary judgment first, and only turn to

plaintiff's cross-motion if its claims survive defendant's dispositive motion.

### A. <u>Defendant's Motion for Summary Judgment</u>

Barker's summary judgment motion claims that PIIC has failed to provide

any admissible evidence as to the damages the fire caused to the building.  As

relevant to this case, under New York law "the proper measure of damages

for permanent injury to real property is the lesser of the decline in market

value and the cost of restoration." *Scribner v. Summers*, 138 F.3d 471, 472

(2d Cir. 1998).  Once the plaintiff has proven one of those, it is on the

defendant to prove "that a lesser amount will sufficiently compensate for the

loss." *Id.* (cleaned up).  A landlord can also recover for "reduction of the

rental or usable value of the property" during the time it took to rebuild a

structure on a piece of property.  *Id.*

The Court used New York state law for the substance of what PIIC needs to prove, because it is beyond dispute that the damages of a state law cause of action are controlled by state law.  *Cf. Shady Grove Orthopedic Assocs., P.A. v. Allstate Inc. Co.*, 559 U.S. 393, 447 (2010) (Ginsburg, J., dissenting) ("[T]he remedy for an infraction of state law . . . is the legitimate concern of the State's lawmakers and not of the federal rulemakers.").

However, whether a witness must be an expert in order to testify on a particular point is within the province of the Federal Rules of Evidence, and those rules govern.[5]  *Shady Grove*, 559 U.S. at 398 (noting that if federal rule answers question in dispute "it governs—New York's law notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power").  Accordingly, the parties do not dispute that Federal Rule of Evidence ("Evidence Rule") 702 dictates when testimony must come from an expert as opposed to a lay witness.

Evidence Rule 702 allows for a witness to provide opinion testimony if the following four conditions are met: (1) the expert's scientific, technical, or other specialized knowledge will help the factfinder understand the evidence

---

[5] If New York state law imposed a specific requirement that damages to real property must be proven through expert testimony, it is possible that that rule would control.  *See Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1108-09 (D.C. Cir. 2012) (holding that District of Columbia's requirement that expert testimony accompany certain claim applied notwithstanding Evidence Rule 702).  However, defendant has pointed to no such rule, and the Court is aware of none.  The Court will therefore only address defendant's arguments under Evidence Rule 702.

or determine a fact; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's application of the principles and methods to the facts of the case is itself reliable.

Barker argues that PIIC has never provided her with an expert witness relating to the damages it suffered as a result of the fire. Defendant claims that this is fatal to plaintiff's case, because courts often require experts on the issue of damages. In support, defendant cites a broad range of cases which she styles as showing plaintiffs' claims falling apart in the absence of expert damages calculations. In broad strokes, her collected cases are either so contextually inapt as to be less than helpful or else do not actually impose a requirement of expert testimony for damages. S*ee, e.g.*, *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298-99 (2d Cir. 2006) (affirming district court's preclusion of expert witness because plaintiff failed to produce evidence of damages to support lost profits, making lack of experts moot); *but see In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2018 WL 6333657, at *2 (S.D.N.Y. Dec. 4, 2018) (noting that because of inherent difficulties in securities class actions, expert testimony often required for damages).

However, one of Barker's cited authorities does stand out as meaningfully similar to this case (at least at first blush): *New York Central Mutual Insurance Company v. TopBuild Home Services, Inc.* 2019 WL 1791844

10

(E.D.N.Y. Apr. 24, 2019).  In that case, much like this one, an insurance company brought a claim as a subrogee of owners of a building damaged by fire.  *Id.* at *1.  Both parties submitted expert testimony as to the diminution of value the property suffered as a consequence.  *Id.* at *1-2.

But facial similarities aside, there are two reasons that Barker's reliance on *TopBuild* is misguided.  2019 WL 1791844.  First, that case never *required* that its plaintiff provide expert testimony on pain of dismissal.  *See generally*, *id.*  Second, even if plaintiff had been required to provide expert testimony on damages in that case, its plaintiff was operating on an entirely different theory of recovery.  *Id.* at *1-2 (noting that experts were prepared to testify as to diminution of value of real property).

It would be one thing for Barker to argue that PIIC would need expert testimony to establish the value of the building before and after the fire.  She could reasonably contend that this measure of damages would not be subject to "simple mathematical calculation" and that an expert would be needed to justify any damages estimate plaintiff could come up with.  *See U.S. Licensing Assocs., Inc. v. Rob Nelson Co.*, 2012 WL 1447165, at *5 n.8 (S.D.N.Y. Apr. 26, 2012) (noting that plaintiff must provide damages calculation where damages "are not the product of a simple mathematical calculation and require expert testimony").

In this context, though, Barker's argument that PIIC needs an expert to sustain its claimed damages must be rejected.  Presenting evidence of the actual cost to rebuild the building would require no "scientific, technical, or other specialized knowledge," so as to even *permit* an expert to testify under Evidence Rule 702, let alone require one.  FED. R. EVID. 702(a) (requiring specialized knowledge to provide expert opinions).  Plaintiff need only show what it actually paid to rebuild the building to recover, *Scribner*, 138 F.3d at 472, and that burden can be satisfied simply by plaintiff supplying the invoices it accrued paying contractors.  It would be profound overkill to suggest that a factfinder needs expert help to parse those documents and award damages based on the costs that they reflect.

 Perhaps Barker realizes this, because she has one more argument up her sleeve.  As defendant would have it, the documents Vaughn submitted in his report reflected only an agreed settlement that PIIC, as an insurance company, paid to its insured, and not the actual cost to restore the building.

Why does that matter?  Because PIIC's stake in this case is as a subrogee, and thus plaintiff can only recover what Baldwin, the building's owner, could have recovered if it had not been insured and had sued defendant to recover from her.  *See In re Sept. 11 Litig.*, 802 F.3d 314, 351 (2d Cir. 2015) (Straub, J., concurring) (noting that under New York law subrogation "entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from

third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse" (citing *N. Star Reinsurance Corp. v. Cont'l Ins. Co.*, 624 N.E.2d 647, 654 (N.Y. 1993)); *TopBuild*, 2019 WL 1791844, at *4-5 (noting that insurance company as subrogee for claim of fire damage to real property could not recover more than owner of property could have).

In other words, if PIIC has only submitted evidence of a negotiated settlement rather than evidence of actual costs to rebuild, then it has not provided evidence of damages that Baldwin could have recovered if it was bringing this claim in its own right.  Thus, plaintiff would have failed to prove the essential element of damages.

Unfortunately for Barker, her showing is not enough to merit summary judgment in her favor.  After all, PIIC disputes that Vaughn's report reflects a negotiated settlement with Baldwin as opposed to actual costs paid to contractors.  PSMF ¶ 10.  At best,[6] defendant has created a dispute of material fact as to what Vaughn's report shows.  But her burden on summary judgment is much heavier than that.  *See Celotex*, 477 U.S. at 323 (noting that movant's burden on summary judgment is to prove lack of genuine dispute of material fact).  Defendant must prove that there is no genuine

---

[6] The Court also sets aside the relative evidentiary strength of carefully curated segments of Vaughn's report and deposition in defendant's favor against the documentary evidence of paid invoices in plaintiffs'.  *Compare*  Dkt. 28-1, pp. 4, 137, 182, 380, 382; Dkt. 28-2 ("Vaughn Dep. 1"), pp. 14, 48, 63; Dkt. 282-3 ("Vaughn Dep. 2"), pp. 18-19, 26, *with* Dkt. 28-1, pp. 456, 475.

dispute as to what the costs in Vaughn's report reflect, and she has failed to do so.  Her motion for summary judgment must therefore be denied.

## B. Plaintiff's Cross Motion to Strike an Expert Report

Now that PIIC's claim will remain viable, the Court can turn to plaintiff's cross-motion to exclude McAllister's supplemental report.  Under Rule 26(a)(2)(D), a party is bound to make disclosures according to the Court's timeline.  Rule 26(e)(1)(A) requires a party to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect," so long as that information was not known to other parties through discovery.

The rules are a little different for expert disclosures, however.  An expert's supplemental report "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  FED. R. CIV. P. 26(e)(2). Remember, though, that Magistrate Judge Stewart's scheduling order superseded Rule 26(a)(3)'s deadlines and required all rebuttal experts by thirty days before the close of discovery, which was ultimately set for November 16, 2020.  Dkts. 13, ¶¶ 1, 6(A)(iii); 23.

In other words, to the extent that McAllister's December 30, 2020 supplemental report qualifies as an expert rebuttal, it was untimely.  *See* Dkts. 13, ¶ 6; 23; 28-4, p. 2.  Yet according to Barker, McAllister's report was not a rebuttal, but a supplemental report to add information based on the

14

new information contained in Vieau's rebuttal.  Instead, defendant would have McAllister's supplemental report's timeliness measured against Rule 26(a)(3), because the scheduling order only contemplates "rebuttal" disclosures, not supplements.

That argument must fail.  The notion that McAllister's report is not intended to be a rebuttal cannot withstand even cursory scrutiny.  Every point in McAllister's summary of opinions in her second report either mentions Vieau by name or else specifically controverts an essential portion of his rebuttal disclosure.  McAllister Suppl. 18.  It contains no previously overlooked details, corrected inaccuracies, or other necessary amendments to McAllister's earlier disclosures.  *See generally id. passim.*  Instead, it works to undermine Vieau's final report past the deadline for Barker to do so.  As a consequence, McAllister's supplemental report amounts to a rebuttal of a rebuttal, and it comes more than two months after the final deadline imposed by Magistrate Judge Stewart.

In any case, Barker's hyper-technical argument also has pragmatic faults that make it unworkable.  Permitting plaintiff to backdoor additional expert materials using this method would defeat the entire point of setting a deadline for expert rebuttals.  If, as defendant suggests, a party can continue to supplement expert reports with "new information" in the form of counters to her opponent's rebuttal disclosure without running afoul of the specific

15

deadline for a rebuttal disclosure, parties could simply recast their rebuttal disclosures as "supplements" and avoid all deadlines except for Rule 26(a)(3). The parties could then fire off dueling disclosures until thirty days before trial, at which point whoever had the opportunity to submit one last "supplemental" expert report would have the meager advantage of the last word in exchange for flooding the docket with expert disclosures.

In short, McAllister's supplemental report must be construed as a rebuttal, and Barker filed that report out of time.  But establishing the fact of defendant's untimeliness does nothing to establish what the penalty should be.

To that end, a district court has discretion to exclude expert testimony under Rule 37(c)(1) if the testimony's proponent failed to comply with Rule 26's disclosure requirements.  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).  That discretion is gauged by the Court's consideration of four factors: (1) the party's explanation for failing to comply with disclosure requirements; (2) the importance of the precluded testimony; (3) the prejudice of the opposing party for having to prepare to meet the new testimony; and (4) the possibility of a continuance.  *Id.*

Applying those four factors to Barker's submission of McAllister's supplemental report, that report must be struck.  Defendant's only explanation for her pronounced delay in submitting that report was a

technical one, which if correct would have made McAllister's supplemental report not late at all.   That explanation was just debunked at a modest length, and does not provide defendant much shelter under the first relevant factor. *Patterson*, 440 F.3d at 117.

Barker's only other explanation for the delay in producing McAllister's supplemental report consists of a series of complaints about materials that Vieau failed to bring to his deposition and defendant's only receiving the transcript of that deposition on November 1, 2020, after the rebuttal deadline.  Dkt. 29-2, pp. 2-3 (email from stenographer dated November 1, 2020 providing Vieau transcript).  On its face, defendant not receiving the necessary documentation to grapple with Vieau's testimony would appear to be a reasonable excuse.

The problem for Barker, though, is that Vieau's deposition was scheduled for October 20, 2020, the day after rebuttal expert disclosures were due. Dkt. 29-2, pp. 2-3.  Defendant therefore made the tactical decision to depose Vieau with the benefit of his rebuttal disclosure.  That maneuver provided the defensive advantage of ensuring defendant was maximally prepared to depose him, but it brought with it the offensive disadvantage of ceding her ability to rebut his deposition testimony through McAllister's expert report. Defendant's attempt to have her bullet and shoot it too by submitting

McAllister's rebuttal out of time is not a satisfying explanation for her delay. *Patterson*, 440 F.3d at 117.

Regarding the second factor the Court must consider, Barker has not addressed the extent to which McAllister's supplemental report is important to her case.  The Court is thus not particularly well equipped to weigh this factor.  In any case, considering that McAllister's testimony as a whole would not be precluded, she would only be precluded from testifying as to the substance of her supplemental report, defendant would still be able to provide expert testimony on the cause of the fire.  This additional material is therefore not important enough to dissuade the Court from striking it. *Patterson*, 440 F.3d at 117.

As to the third factor, PIIC has successfully pointed to prejudice if the Court were to permit McAllister's supplemental report to stand.  Magistrate Judge Stewart set the expert rebuttal deadline for specific purposes discussed above.  Barker attempted to flout his authority to steal a tactical advantage in the form of a rebuttal to Vieau's rebuttal.  Permitting that to stand would prejudice both plaintiff and the integrity of this Court.  As a result, the Court is of no mind to grant a continuance to resolve this issue, and plaintiff has proven prejudice.  *Patterson*, 440 F.3d at 117.

In short, none of the four factors this Court must consider before striking untimely disclosures favors defendant.  *Patterson*, 440 F.3d at 117.

Accordingly, McAllister's supplemental report must be struck, and its contents are deemed inadmissible at trial.[7]  *See, e.g.*, *Wiener v. AXA Equitable Life Ins. Co.*, 2019 WL 1228074, at *11 (S.D.N.Y. Mar. 15, 2019) (deeming untimely supplemental expert report inadmissible).

## IV. <u>CONCLUSION</u>

Barker raised some creative arguments in the present motion practice. Unfortunately for her, none of them were availing.  Despite her best efforts, the extent of PIIC's damages from the building's fire remains a jury question. But there is no question that defendant's disclosure of McAllister's supplemental report came far too late for it to be admissible.  That report is precluded, and this case will proceed to trial.

Therefore, it is

ORDERED that

1. Defendant Kathleen Burke Barker's Motion for Summary Judgment is DENIED;

2. Plaintiff Philadelphia Indemnity Insurance Company's Cross-Motion to strike expert witness Dr. Jamie McAllister's supplemental report is GRANTED; and

---

[7] Plaintiff may move *in limine* to define the scope of that preclusion when it submits its final pretrial documents.

3.  Dr. Jamie McAllister is precluded from testifying at trial as to the

subject matter unique to her supplemental report.

IT IS SO ORDERED.


Dated:  May 7, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge